UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAWN T. KINSLOW-DOBBS,

    Plaintiff,

v.                                                           CASE NO. 3:20-cv-465-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding her application for a period of disability and disability insurance benefits ("DIB"). Following an administrative hearing held on September 19, 2019, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from December 8, 2016, the alleged disability onset date, through January 2, 2020, the date of the ALJ's decision.[2] (Tr. 9-17, 48-107.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 26.)

[2] Plaintiff had to establish disability on or before December 31, 2021, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 10.)

I.   **Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

II.   **Discussion**

    A.   **Issues on Appeal**

Plaintiff argues that the ALJ improperly substituted his opinion for that of Michael Venezia, M.D., a State agency consultative examiner, and issued a decision not supported by the record. (Doc. 28 at 11.) Plaintiff further argues that the ALJ improperly discounted the opinions of the State agency reviewing physicians at the reconsideration level, Fredrick Lutz, M.D. and Arvind Chopra, M.D., in favor of the opinions of Shakra Junejo, M.D., a State agency reviewing physician, who reviewed the record at the initial level of review and did not have the benefit of reviewing Dr. Venezia's opinion or the additional medical evidence. (*Id.* at 14-15.) Plaintiff explains that the opinions of Dr. Venezia, Dr. Lutz, and Dr. Chopra directly contradict the ALJ's conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform light work. (*Id.* at 17.) Plaintiff states:

> The ALJ's error was not harmless because additional limitations may have impacted [Plaintiff's] ability to perform her past work. The VE [Vocational Expert] testified that Dr. Venezia's assessment would preclude all full[-]time work. The VE was not asked to assume the exact limitations identified by Dr. Chopra and Dr. Lutz. Due to the ALJ's failure to offer legitimate reasons for rejecting the opinions of Dr. Chopra, Dr. Lutz and Dr. Venezia, [Plaintiff] respectfully requests reversal and remand for proper analysis.

(*Id.*)

Defendant responds that the ALJ properly evaluated the opinions of Dr. Venezia, Dr. Lutz, and Dr. Chopra under the revised rules and regulations that apply to claims, such as Plaintiff's application, filed on or

3

after March 27, 2017, and his RFC assessment generously accommodated any limitations resulting from Plaintiff's physical impairments. (Doc. 29 at 1.) Defendant argues that the ALJ's decision is supported by substantial evidence and decided by proper legal standards, and, thus, it should be affirmed. (*Id.*)

### B. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinions, the rules in 20 C.F.R. § 404.1520c apply to claims filed on or after March 27, 2017.[3] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised rules and regulations in effect at the time of the ALJ's decision.

Under the revised rules and regulations, the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ will articulate in the administrative decision how persuasive all of the medical opinions are in the

---

[3] The rules in 20 C.F.R. § 404.1527 apply to claims filed before March 27, 2017.

4

case record, 20 C.F.R. § 404.1520c(b), but need not articulate how evidence from non-medical sources has been considered, 20 C.F.R. § 404.1520c(d).

"When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. §§ 404.1520c(c)(1) through (c)(5), as appropriate. 20 C.F.R. §§ 404.1520c(a), (b)(1). The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

When evaluating the persuasiveness of medical opinions, the most important factors are supportability[4] and consistency.[5] 20 C.F.R. §§ 404.1520c(a), (b)(2). Thus, the ALJ "will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c). 20 C.F.R. § 404.1520c(b)(2). When "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record

---

[4] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).

[5] "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

. . . but are not exactly the same," the ALJ will articulate how he/she considered the other most persuasive factors listed in 20 C.F.R. §§ 404.1520c(c)(3) through (c)(5), which include a medical source's relationship with the claimant,[6] specialization, and other factors.[7] 20 C.F.R. § 404.1520c(b)(3).

### C. Relevant Evidence of Record

#### 1. Dr. Venezia's Consultative Evaluation

On March 31, 2018, Dr. Venezia examined Plaintiff at the request of the State disability office. (Tr. 991-96.) Plaintiff alleged low back pain, neck pain, chronic migraines, post-traumatic jaw pain, and knee pain. (Tr. 991.) Dr. Venezia summarized Plaintiff's medical history as follows:

> The claimant has had pain and difficulty in both shoulders. The claimant has had pain and difficulty in both hands. The claimant has had pain and difficulty in both knees. The claimant has had pain and difficulty in both feet. She has had surgery on the right foot. The claimant has had pain and difficulty in her cervical vertebrae. The claimant has had pain and difficulty in her thoracic vertebrae. The claimant has had pain and difficulty in

---

[6] The relationship with the claimant factor combines consideration of the following issues: the length of the treatment relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

[7] The other factors may include: the medical source's familiarity with the other evidence in the claim; the medical source's understanding of the disability program's policies and evidentiary requirements; and the availability of new evidence that may render a previously issued medical opinion more or less persuasive. 20 C.F.R. § 404.1520c(c)(5).

> her lumbar vertebrae.
> . . . The claimant states she has [a] history of irritable bowel syndrome. . . .
> The headache is stabbing, [with] tightness/stiffness, comes on approximately 3 time(s) a month and lasts about 2 day(s). Tension and stress will bring on the headache. The claimant states she has double vision and nausea with these headaches. The headaches were relieved by over[-]the[-]counter medication.
> . . . The claimant states she uses knee braces to ambulate. The claimant states she is able to walk [a] very short distance on level ground. . . . The claimant states she has difficulty standing for 5-15 minutes. The claimant states she has difficulty lifting more than 0-5 pounds with the right arm. The claimant states she has difficulty lifting more than 0-5 pounds with the left arm. The claimant states she is able to drive a car for no more than 15-30 minutes at a time. The claimant states she is able to sweep for no more than 0-5 minutes at a time. The claimant states she is able to mop the floor [for] no more than 0-5 minutes at a time. The claimant states she is not able to vacuum. The claimant states she is not able to cook. The claimant states she is not able to do dishes. The claimant states she is not able to shop for groceries. The claimant states she is not able to climb up stairs. The claimant states she is not able to take care of the yard. The claimant states she is not able to mow the grass. The claimant states she is not able to turn a doorknob.

(Tr. 991-92.) Dr. Venezia's review of systems included a history of fatigue, IBS, hematuria, depression, and anxiety. (Tr. 993.)

Plaintiff's physical examination was generally normal, except for tenderness over her posterior neck, inability to walk on toes and heels, difficulty squatting, and some painful movements. (*See* Tr. 993-94 ("The claimant ambulates without difficulty and without assistive device. Gait is normal.").) Plaintiff's neurological examination was also normal, except for abnormal sensation and weakness in the bilateral proximal and distal arms

7

and legs on a scale of 4 out of 5.  (Tr. 995.)

Dr. Venezia's impression was low back pain, neck pain, chronic migraines, post-traumatic jaw pain, and knee pain, with recommendation to continue to follow-up with the Veterans Administration.  (*Id.*)  In summary, Dr. Venezia opined:

> Based on the available medical history and objective clinical findings, this claimant has limitations.  They are as follows: The claimant has limitation in standing and is able to stand occasionally in an 8[-]hour work[-]day.  The claimant has limitation in sitting and is able to sit occasionally in an 8[-]hour work[-]day.  The claimant could walk not at all [sic] in an 8[-]hour work[-]day.  The claimant has a limited ability to bend or stoop.  The claimant has limitations in mentation [due to] migraines.  The claimant was able to ambulate, had difficulty, but did not require [an] assistive device.

(Tr. 995-96.)

## 2. State Agency Non-Examining Physicians

On January 22, 2018, after reviewing the records available as of that date, Dr. Junejo completed a Physical RFC Assessment of Plaintiff's functional abilities.  (Tr. 125-27.)  Dr. Junejo opined, *inter alia*, that Plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently; could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday; and could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds.  (Tr. 125-26 (also noting limited fine manipulation with both hands).)

8

On April 10, 2018, based on a review of the available records, Dr. Lutz completed a Physical RFC Assessment of Plaintiff's functional abilities. (Tr. 139-43.) He opined that Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently; could stand and/or walk for two hours and sit for about six hours in an eight-hour workday; could never climb ladders, ropes, and scaffolds; could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; and should avoid moderate exposure to hazards and concentrated exposure to noise. (Tr. 140-42 (also noting limited fine manipulation with both hands).)

On August 24, 2018, after reviewing the medical evidence in the file, Dr. Chopra re-affirmed Dr. Lutz's Physical RFC Assessment. (Tr. 147.)

### D. The ALJ's Decision

At step two of the sequential evaluation process,[8] the ALJ found that Plaintiff had the following severe impairments: generalized osteoarthritis, degenerative disc disease of the lumbar spine, obesity, sleep apnea, temporomandibular joint ("TMJ") syndrome, irritable bowel syndrome ("IBS"), and a history of migraine headaches. (Tr. 12.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of

---

[8] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

9

impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 13.)

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work, as follows:

> [The claimant] can lift/carry and push/pull 20 pounds occasionally (up to one-third of the workday) and 10 pounds frequently (up to two-thirds of the day); sit for two hours at a time and a total of eight hours during an eight-hour day with customary breaks; and stand and/or walk for two hours at a time and a total of six hours during an eight-hour day with customary breaks. The claimant can occasionally climb ladders and stairs/ramps, and can frequently balance, stoop, kneel, crouch[,] and crawl. The claimant has no limitations concerning manipulation, vision, or communication but has environmental limitations precluding concentrated exposure to noise and even moderate exposure to work hazards including unprotected heights and dangerous machinery. There are no significant mental limitations.

(Tr. 14.)

In making these findings, the ALJ discussed Plaintiff's complaints, the medical evidence, and the medical opinions of record. (Tr. 14-16.) The ALJ addressed Dr. Venezia's opinions as follows:

> There is a March 2018 consultative examination indicating that the claimant cannot walk or stand for more than very little time (Exhibit 7F). This opinion is completely inconsistent with the objective medical evidence indicating the ability to ambulate normally without difficulty and without any assistive device. The claimant had no evidence of muscular atrophy. Her grip strength is full 5/5 grip and her abilities for fine/gross/manipulative skills are full. This opinion is not support[ed] by the treatment history; thus, it is deemed unpersuasive.

10

(Tr. 15.)

The ALJ then addressed the opinions of the State agency non-examining doctors, Dr. Lutz and Dr. Junejo, as follows:

> In April 2018, the State agency physician issued sedentary exertional work limitations (Exhibit 3A) which are inconsistent with the claimant's conservative treatment history and objective medical findings as well as activities of daily living including the ability to live independently. Therefore, this opinion is deemed unpersuasive.
>
> The State agency physician opined in [January of] 2018 that the claimant is capable of light exertional work with occasional postural and frequent bilateral fingering (Exhibit 1A). These limitations are supported by the medical evidence of record as well as the claimant's ability to live alone[,] thus[,] [they] are persuasive.

(*Id.*) The ALJ then stated:

> As for medical opinion(s) and prior administrative medical finding(s), the [ALJ] cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The [ALJ] has fully considered the medical opinions and prior administrative medical findings.

(Tr. 16.)

The ALJ added:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent and not supported by the medical evidence of record. In addition to limited objective medical evidence and conservative treatment, the claimant lives independently by herself and drives regularly once or twice per week to run errands to the bank, convenient [sic] store, or to pick up food at a restaurant. The claimant takes care of her own personal care needs.

11

> Notably, the claimant has not required surgical intervention for any of her alleged physical impairments as testing has been essentially minimal. While she has been treated for migraine headaches, the evidence shows a good response with limited use of medications and no frequent emergency room visits.
>
> The claimant drew unemployment benefits for a period of time after her alleged disability onset date and looked for jobs consistent with her past work. Such activity indicates an ability to work on at least some level after the alleged onset date of disability.

(*Id.*)

The ALJ concluded that his RFC assessment was "supported by the record, when considered as a whole." (*Id.*) He explained:

> The objective medical evidence . . . suggests greater sustained capacity than described by the claimant. Notwithstanding the claimant's allegations, treatment records and examinations do not provide evidence that would reasonably support a finding that the claimant is as limited as alleged. Ultimately, the claimant alleges a greater degree of debilitation than the medical evidence can support.

(*Id.*)

Then, at step four, the ALJ determined that Plaintiff was capable of performing her past relevant work of a caseworker[9] (DOT # 195.107-010, as actually and as typically performed) and an admission evaluator/resource

---

[9] The caseworker job is sedentary according to the Dictionary of Occupational Titles ("DOT"), but Plaintiff performed it at the light exertional level. (Tr. 17.)

teacher[10] (as actually performed).  (Tr. 16-17.)  Thus, the ALJ concluded that Plaintiff was not disabled from December 8, 2016 through January 2, 2020. (Tr. 17.)

### E.   Analysis

The Court finds that the ALJ's decision is based on correct legal standards and is supported by substantial evidence in the record.  The ALJ properly addressed the supportability and consistency factors set forth in 20 C.F.R. §§ 404.1520c(c)(1) & (c)(2), and his finding that Dr. Venezia's and Dr. Lutz's opinions are unpersuasive is supported by substantial evidence in the record.

First, the ALJ properly observed that Dr. Venezia's opinion that Plaintiff could not walk at all and could stand only occasionally was inconsistent with the objective medical evidence indicating an ability to ambulate normally without an assistive device and showing no evidence of muscular atrophy.  (*See* Tr. 895, 898-99, 904-45, 969-1007, 1011-19, 1022-27, 1030-31; *but see* Tr. 811 ("Veteran reporting that she went to a wedding this weekend and is in severe pain and cannot walk."); Tr. 1008 ("[Patient] moving slowly due to spasm."); Tr. 1045-46 (noting decreased mobility, weakness, joint instability and tenderness, but normal examination except

---

[10] This is a composite job of an admission evaluator (DOT # 205.367-010, sedentary work) and a resource teacher (DOT # 099.227-042, light work).  (Tr. 17.)

for active painful range of motion of the left knee).) Of note, Dr. Venezia's own examination report stated that Plaintiff ambulated "without difficulty and without assistive device" and that her gait was normal. (Tr. 993; *see also* Tr. 996 ("The claimant was able to ambulate, had difficulty, but did not require assistive device.").)

Also, as the ALJ observed, Dr. Venezia's opinion was not supported by Plaintiff's conservative treatment history, which included over-the-counter medications, acupuncture, battlefield acupuncture, physical therapy, massage therapy, manual therapy, heat/ice, and chiropractic care. (*See* Tr. 84, 108-10, 306, 328, 359, 459-60, 979, 1046, 1069, 1083-84, 1088-89; *see also* Tr. 88 & 918 (stating that Plaintiff does not take any pain medications, muscle relaxers, or Gabapentin for nerve pain); Tr. 377 ("She is seeing a chiropractor, doing [physical therapy] and battlefield acupuncture with some improvement."); Tr. 1086 ("She has been to [occupational therapy] and has night splints and takes Aleve for discomfort. No treatment indicated at this time."); Tr. 74 (stating that Plaintiff has not been to "the emergency room in some time").)

For the same reasons that the ALJ found Dr. Venezia's opinions to be unpersuasive,[11] the ALJ also found Dr. Lutz's opinions to be unpersuasive

---

[11] The ALJ also cited Plaintiff's activities of daily living, including her ability to live independently, as an additional basis to find Dr. Lutz's opinions

14

and his finding is supported by substantial evidence. In arriving at the RFC assessment, the ALJ also cited to the limited objective medical evidence in the record, including the essentially minimal findings on diagnostic testing. (*See* Tr. 111 (noting that left hand X-rays from May 15, 2019 showed osteoarthritis of the thumb); Tr. 112 (noting that right hand X-rays from May 15, 2019 showed minimal/mild osteoarthritis); Tr. 113 (noting that left knee X-rays from January 7, 2019 showed minimal osteoarthritis); Tr. 114 (noting that left foot X-rays from December 17, 2018 showed first metatarsophalangeal ("MTP") joint osteoarthritis with bunion); Tr. 433 (noting that right hip X-rays from October 6, 2017 showed "[n]o interval change or acute abnormality"); Tr. 385 (noting that CTE of the abdomen and pelvis from August 31, 2017 showed segmental luminal narrowing of the descending colon and no evidence of small bowel inflammatory disease); Tr. 358 (noting that a radiology report on Plaintiff's cervical, thoracic, and lumbar back from August 11, 2017 showed, *inter alia*, "a lateral lean to the right in the cervical region along with a lift to the right shoulder," "a visible reduction of the normal lordotic curvature," "marginal osteophytes located at the anterior borders of C4-C6," "Grade 1 spondylolisthesis" at C4-C5, and a loss of disc space at C4-C7; unremarkable thoracic spine; and unremarkable

---

unpersuasive. The record supports the ALJ's statement that Plaintiff lives independently, even though her daily activities are limited. (*See* Tr. 55.)

lumbar spine with dextroscoliosis at L3); Tr. 400 (noting that a July 17, 2017 lumbar MRI showed mild lumbar spondylosis, multi-level facet hypertrophic changes greater at L3-L4 through L5-S1, disc bulges at L3-L4 and broad-based at L5-S1, and multi-level mild neural foraminal narrowing); Tr. 439 (noting that right hand X-rays from April 7, 2017 showed mild osteoarthritis of the thumb); Tr. 440 (noting that left hand X-rays from April 7, 2017 showed moderate osteoarthritis of the thumb); Tr. 441 (noting that right hip X-rays from April 7, 2017 were unremarkable with probable bone island within the right femoral neck).)

Further, as the ALJ noted, the treatment records and examinations indicated that Plaintiff's pain was mostly mild to moderate in the 0-3 and 4-5 range on a scale of 0 to 10.  (Tr. 801, 835, 889-90, 898, 900, 904, 911-14, 918, 931-32, 969, 999, 1007-08, 1013, 1091; Tr. 1090 (noting that Plaintiff's chronic pain was acceptable and did not need to be addressed at the July 10, 2019 visit); *but see* Tr. 902-03 (noting a pain level of 8 on a scale of 0 to 10 with "certain movements").)  Although the record included references to pain and limitations (*see* Tr. 359, 406-07, 477-78, 836-37, 854, 858-59, 931-33, 977), Plaintiff frequently reported that she felt much better (*see* Tr. 900, 970, 974, 980, 982, 984, 1001-02, 1004-05, 1008, 1023, 1025, 1027), and that her treatments were helping (*see* Tr. 898, 909, 916, 934, 969, 1012-13; *see also* Tr. 714, 723 & 740 (noting Plaintiff's impairments had no impact on her ability

16

to work)).

Based on the foregoing, the ALJ's evaluation of the medical opinions and prior administrative medical findings in arriving at the RFC assessment is supported by substantial evidence. Plaintiff argues that the ALJ erred in finding Dr. Junejo's January 2018 opinions more persuasive compared to Dr. Lutz's April 2018 opinions[12] and Dr. Venezia's March 2018 opinions. The Court does not find any error because "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same). Although Dr. Junejo did not have access to the opinions of Dr. Venezia and Dr. Lutz, the ALJ had access to the entire record and his findings are supported by substantial evidence. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (per curiam) (stating that "even if the non-examining doctor was unable to review all of [claimant's] medical records . . . , she cited several portions of the record in support of her conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as [claimant's] testimony"). In sum, because the ALJ's evaluation of the medical opinions

---

[12] Dr. Lutz's opinions were adopted, without elaboration, by Dr. Chopra in August of 2018. (Tr. 147.)

17

and prior administrative medical findings was based on correct legal standards and was supported by substantial evidence, the ALJ did not err in failing to account for any limitations assessed by Dr. Venezia and Dr. Lutz in his RFC assessment.

### III.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1.   The Commissioner's decision is **AFFIRMED**.

2.   The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 23, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record